IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINGLONG AMERICAS INC., *et al.*, | ) | CASE NO. 1:15 CV 1240 |
| Plaintiffs, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| HORIZON TIRE, INC., *et al.*, | ) | |
| Defendants. | ) | MEMORANDUM OPINION |

This matter is before the Court on Plaintiffs Shandong Linglong Tire Co., Ltd, LLIT (Thailand) Co., Ltd., and Linglong Americas Inc.'s Motion for Partial Summary Judgment. (ECF # 151, 152), and Counter Defendants Feng Wang and John Hagan's Motion for Summary Judgment. (ECF #153, 154). Both motions have been fully briefed and are ready for disposition. (ECF # 159). Having considered all of the arguments of the parties, and having reviewed the undisputed facts and applicable law, the Court finds that Plaintiffs' Motion should be GRANTED in part and DENIED in part, and that Counter Defendants' Motion should be GRANTED in part and DENIED in part.

## Facts[1]

Plaintiff, Shandong Linglong Tire Co., Ltd. ("Linglong") is a manufacturer of tires headquartered in the Shandong Province in China. LLIT (Thailand) Co., Ltd. ("LLIT") is a wholly owned subsidiary of Linglong, which also manufactures tires, and is based in Thailand. Linglong Americas, Inc. ("LL Americas") is a subsidiary of Linglong, which was incorporated in 2014. Counter Defendant, Feng Wang is the Chairman and General Manager of Linglong. He is also an officer of LLIT and LL Americas.

Defendant, Horizon Tire, Inc. ("Horizon") is a tire distributor in the United States. In 2005 Horizon and Linglong began talking to each other about the development, manufacture, and sales of a new brand of tire called "Crosswind." Horizon and Linglong entered into a Collaboration Agreement ("Agreement") on December 1, 2006. The Agreement provided that Linglong would manufacture Crosswind tires and that Horizon would be the exclusive distributor of those tires in the United States. That written Agreement expired in 2011. After the Agreement ended, Horizon continued to act as Linglong's sole distributor of Crosswind tires under an oral exclusive distributor agreement. The parties agree that this oral agreement provided that Horizon would continue to be the exclusive distributor of Crosswind tires in the United States (except for South Florida and Puerto Rico).

Beginning in 2014, production of the Crosswind tires shifted to LLIT in Thailand, due to tariffs the United States had announced against tires manufactured in China and shipped to the

---

[1] Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

-2-

United States. Horizon began ordering the Crosswind tires from LLIT and submitted a purchase plan for 2015 indicating that it would purchase between 2.9 and 3.9 million Crosswind tires from LLIT in 2015.[2]

In the fall of 2014, Linglong asked for, and Horizon provided a copy of Horizon's customer list, so that it could, in part, avoid selling other Linglong brand tires to Horizon's customers and could help Horizon increase sales in underdeveloped territories. The list included the names of known buyers of Crosswind tires, broken down by state. It identified the kind of tires each customer bought and included a projection of gross sales by state for tires manufactured by Linglong. Horizon claims that it took reasonable care to keep the list confidential, and that Linglong had promised to keep the list confidential. Horizon also claims that Linglong provided the list to LL Americas, and that LL Americas used the list to try to "poach" Horizon's customers.

In November of 2014, Horizon claims that Linglong asked it for a loan to LLIT in order to assist the company in going public. On December 16, 2014, Horizon claims that it loaned LLIT $3.6 million, and that the loan was to be repaid within one or two months. Horizon also claims that Linglong listed the proceeds from the loan as sales revenue to make the accounting look more favorable for the initial public offering.

On November 11, 2014, Horizon and LLIT entered into two sales contracts for a total of 588,500 tires, which they called "the Big Order." The first contract was for 323,500 tires, and the second was for 265,000 tires. This was the largest order Horizon had ever placed with Linglong or its subsidiaries. The contracts provided that shipments would be made "As Soon As Possible."

---

[2] Linglong cites Qui Dep. at 135:11-137:8 for these numbers. Horizon contends that it forecasted purchasing 3.7 million tires, citing Calland Decl. Ex. 25.

Horizon claims that this was understood to mean that the Big Order would be substantially completed by March 31, 2015. Due to various circumstances, LLIT faced delays manufacturing the tires that were part of the Big Order. Linglong and LLIT claim that at the end of February, Mr. Wang informed Horizon that LLIT would complete the order within five months. Horizon, on the other hand, claims that Mr. Wang continued to assure Horizon that the tires would all be delivered on time, shipping by the end of February.

Horizon claims that due to the production delays at LLIT, it began to lose customers because it could not fill their orders on a timely basis. It also claims that it had to accept non-conforming tires, and to sell tires it did receive at a discount in order to maintain customers. According to Horizon, LLIT had sent only about one third of the tires covered by the Big Order by May of 2015, and that it had failed to ship about half of the size specifications in that order. Further, Horizon claims that Linglong changed the terms of delivery making it more difficult for Horizon to claim shipped tires at the port. It has cited evidence in support of all of these allegations. Linglong claims that it shipped tires in accordance with the sales agreements and that Horizon did not timely pay for the tires. It also has provided some evidence in support of its claim.

The parties agree Horizon began refusing shipments of tires from LLIT in May of 2015. On May 8, 2015, Horizon sent Linglong a "formal notice" by which it "hereby terminates for cause all outstanding purchase orders to Linglong that have not been received by Horizon." This letter was meant to terminate all orders placed with Linglong or LLIT. The letter also gave "formal notice of termination of Horizon's contractual obligations with Linglong." At some point, Linglong, began working with other distributors, including LL Americas, to sell

Crosswinds and other Linglong products to retailers in the United States. Horizon claims that this practice began while its exclusive distributorship agreement was still in place. Linglong claims it did not take any such steps until after Horizon breached and/or terminated its contract with Linglong.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does "not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

[i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Analysis

Plaintiffs and Counter Defendants seek summary judgment on Counts 1 and 2 of the Complaint and Counts 3, 5, 9-11, and 14-17 of the Counterclaim. Following the filing of the Summary Judgment motions, Horizon has agreed not to pursue counterclaims 9, 10, or 17, and to dismiss all of its claims against Counter Defendant John Hagan. Therefore, these claims are hereby dismissed. All other challenged claims will be addressed below.

### A. Breach of Sales Contracts (Complaint, Counts 1-2; Counterclaim 5)

Both parties have submitted some evidence to support their claims with regard to their respective breach of contract claims. The parties agree that they had an agreement for the purchase of various tires. They agree that Horizon did not pay for all tires originally ordered. They disagree, however, on who breached the agreement, the extent of any breach, and when each party's obligations under the agreement legally ended. Each party has identified evidence in support of its position. There are a multitude of factual questions remaining that would affect the determination of which party performed under the contract, and to what extent; which party breached the agreement; whether any such breach was material; and, when each party was legally relieved of its obligations under the agreement. There are also disputes, among others, as to the number of conforming tires that were delivered, whether those deliveries were timely under the contract, which shipments Horizon accepted, the amount Horizon owed, the amount Horizon paid, and whether any off-sets should be applied. These questions cannot be resolved at this stage of the litigation and are best determined by a jury following a full trial.

### B. Breach of Exclusive Distributor Agreement (Counterclaim 3).

The parties do not dispute that there was an agreement between Linglong and Horizon making

Horizon the exclusive distributor for Crosswind tires in the United States, except for territories in South Florida and Puerto Rico. They also appear to agree that at some point Linglong and its subsidiaries began using other distributors to sell the Crosswind tires in the United States. The parties disagree, however, on when, if ever, the exclusive distributorship agreement terminated, and on when Linglong began operating outside the terms of that agreement. Both parties have provided some evidence to support their own interpretation of these events. As these disputed facts are material to the existence of an alleged breach of the agreement, summary judgment is not warranted on this claim, at this juncture.

C. Tortious Interference (Counterclaims 9 and 10)

Horizon has voluntarily agreed to dismiss claims nine and ten. For this reason, and the reasons set forth below, counterclaims nine and ten will be dismissed with prejudice.

D. Tortious Interference With Business Relations (Counterclaim 11)[3]

Horizon's Counterclaim alleges that Linglong, LLT, and Mr. Feng interfered with Horizon's relationship with its customers by intentionally failing to deliver tires they were contractually obligated to provide to Horizon, in order to prevent Horizon from fulfilling its contracts with customers. Liability for intentional interference with economic relations requires proof that: (1) the plaintiff has an economic relationship with a third party that has some probability of future economic

---

[3] The parties appear to agree that California law should apply to the tort claims asserted in the Counterclaims. Linglong notes that under Ohio's choice of law rules tort claims, the law of the state where the alleged injury occurred applies. *Am. Interstate Ins. Co. v. G&H Serv. Ctr.*, 112 Ohio St.3d 521, 523, 2007-Ohio-608, 861 N.E.2d 524, at ¶8. As the relationships at issue in this claim occurred throughout the United States, the parties looked to where Horizon is headquartered, which is California. Both parties have, therefore, applied California law in their arguments.

benefit to the plaintiff; (2) the defendant knows about this relationship; (3) the defendant acts intentionally with the purpose of disrupting the relationship; (4) there is an actual disruption of the relationship; and, (5) the defendants acts proximately cause economic harm to the plaintiff. *See, Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). A plaintiff must also demonstrate that the defendant's conduct was wrongful independent of the interference itself, meaning that it violated a constitutional, statutory, regulatory, or common law scheme. *Id.* at 1159.

Linglong's alleged intentional breach of its contract, even if done with the intent of disrupting Horizon's other business relationships, is not an independent wrong that would give rise to liability under this tort. See, *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), superseded by statute on other grounds, *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003). Horizon argues that its claim is not based on Linglong's alleged breach, but rather on fraudulent representations made to Horizon that induced it to enter into the contract and to rely on the fulfillment of the contract when contracting with and obligating itself to the third party businesses. While it may be true that in some instances fraud can be a sufficiently independent wrong to satisfy the elements of tortious interference, in this instance it was Linglong's alleged failure to complete the contract that may have caused the alleged damage to Horizon's other relationships. Had the contract not been breached, Horizon could have fulfilled its obligations under the other contracts and none of the alleged harm would have occurred.

Further, the cases cited by the parties that indicate fraud can be the basis for tortious interference involve the defendant's fraudulent misrepresentations to third parties, not to the plaintiff. There has been no allegation or evidence submitted to suggest that the Counter Defendants made any misrepresentations to Horizon's customers, or that it violated any laws. Further, even if Horizon

could show a sufficiently independent wrong, it has cited no evidence that would support its contention that Linglong's breach was intentional, or that it was aimed at disrupting Horizon's other business relationships. Horizon has not satisfied its burden of showing that there is any evidence upon which a jury could find in its favor on a claim of tortious interference. Summary judgment is, therefore, warranted on this claim.

E. <u>Misappropriation of Trade Secrets (Counterclaim 14)</u>

Under California law, "information including a ... compilation... that [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426(d)(1). In order to be protected, the owner of the information must also take reasonable steps to keep secret. By itself, "knowledge of the identities of businesses which buy from a particular provider of goods or services is of no particular value to that provider's competitors..." *ABBA Rubber Co. v. Seaquist*, 286 Cal. Rptr. 518, 527 (Ct. App. 1991). However, a "customer list may qualify as a trade secret because of its 'economic value' when its 'disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product.'" *Welenco, Inc. v. Corbell*, 126 F.Supp. 3d 1154, 1173 (E.D. Cal. 2015); *see also, MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993). The key question becomes whether the provided list discloses a fact which the competitor previously did not know. *ABBA Rubber v. Seaquist*, 235 Cal. App.3d 1, 18, 19 (1991).

In this case, Horizon claims to have provided Linglong with a list of customers and potential customers of Crosswind tires. Linglong claims that all of this information was publically available through Horizon's advertising, UCC filings, trade organizations, or internet searches. Horizon's Vice

President of Sales indicated in an email that he did not view the customer list as proprietary.[4] (ECF #156, Thomas Decl. Ex. 25, Depo. Ex. 194). An email from Cliff Zhang at Horizon tire indicated that a list of customers, estimated purchase amounts, and customer locations had been prepared "with Linglong" in the SEMA (trade association) meeting. (ECF #156, Thomas Decl. Ex. 27, Depo. Ex. 200).

Horizon also argues, however, that the information it provided went beyond identification of customers and included a state-by-state compilation of customers who purchased the specific tires that Horizon and Linglong offer. They also argue that it took considerable time and resources to compile the list, and that it included forecasted purchase volumes for Linglong manufactured tires, which is not available to the public. They provide at least some evidence suggesting that the list included information gained by sales people from their customers, which would not have been known to the general public. Horizon has identified evidence showing that it treated the information as confidential, and that Linglong actually used the information to specifically target Horizon customers who purchased Linglong tires. Horizon also cited evidence that Linglong promised to keep the information confidential before Horizon turned it over to them.

Although the parties agree that a simple list of businesses that sell tires is not proprietary, there are material questions of fact remaining as to type and value of information provided by Horizon in its customer lists. There is currently undisputed evidence that Horizon made at least some efforts to keep the information confidential, and that Linglong used the information when it began

---

[4]

This statement applied only to the list of actual customers and did not refer to any of the additional information that Horizon contends was part of the listing, including the kinds of tires that Horizon customers bought.

competing against Horizon following the disintegration of their working relationship. The extent of the information provided, and the actual proprietary value of that information is disputed, and is material to the determination of this claim. Summary judgment is, therefore, not appropriate and the issue should be decided by a jury.

F. Deceptive Trade Practices (Counterclaim 15)

Horizon has claimed that the Counter Defendants "have used unlawful deceptive and unfair trade practices in ways damaging to Horizon," in violation of California's Unfair Competition Law ("UCL"). *See*, Cal. Bus. & Prof. Code § 17200. Under this statute, unfair competition is defined as "any unlawful, unfair or fraudulent" business practices." *Id.* The UCL is "sweeping, embracing 'anything that can properly be called business practice and that at the same time is forbidden by law.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999).

As set forth below, Horizon has raised a triable issue on the Counter Defendants' alleged fraudulent behavior in connection with the business dealings at issue. Fraudulent activity is clearly unlawful, and when committed in the context of a business relationship could support a claim for deceptive trade practices under the UCL. Therefore, counterclaim fifteen is not subject to dismissal at this summary judgment stage.

G. Fraud (Counterclaim 16)

The Counter Defendants do not challenge the sufficiency of Horizon's evidentiary support for its claim of fraud, but rather, seek summary judgment on this on the grounds that it is merely a restatement of their breach of contract claim and is, therefore, barred under the economic loss doctrine. California, however, recognizes an exception to the application of the economic loss doctrine that allows a claimant to pursue a tort claim in what would otherwise be solely a contract

action if there are allegations of promisory fraud, or fraud in the inducement of the contract. *See, Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999); *Arena Rest. & Lounge LLC v. Glazer's Wine & Spirits*, LLC, 2018 WL 1805516, 1t *7 (N.D. Cal. Apr. 16, 2018); *Lazer v. Superior Ct.*, 12 Cal.4th 631 (1996). Linglong and the other Counter Defendants do not challenge the existence of this exception, but they argue Horizon did not adequately plead fraud in the inducement, and consequently, the exception cannot be applied in this case.

The factual allegations in the counterclaim fairly raise the claim of fraud in the inducement, even though the actual claim does not mention the word "inducement." "An adequately pled promissory fraud claim that induces the formation of a contract is sufficient to trigger the fraudulent inducement exception to the economic loss rule." *R Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296, at *6 (N.D. Cal. Mar. 29, 2017). Horizon's fraud claim asserts a wide variety of factual allegations, some of which are insufficient to support an actionable claim for fraud under the circumstances. However, Horizon has also alleged that Counter Defendants made representations to Horizon that could qualify as fraud in the inducement, and for the claim that Linglong had no intent to perform its contractual obligations at the time they were entered into. Further, Horizon has submitted at least some evidence in support of these claims, the sufficiency of which has not been challenged by the Counter Defendants. There are, therefore, factual issue as to whether a recognized exception to the economic loss doctrine applies in this case, and whether Horizon can prove some type of fraud in this case. For this reason, summary judgment is not warranted on this count.

H. Conspiracy (Counterclaim 17)

Horizon originally brought a counterclaim for conspiracy against all Counter Defendants. Linglong argued that there could be no conspiracy claim because all Counter Defendants are part of

the same organization, and under the California intracorporate conspiracy doctrine, a conspiracy cannot be wholly made up of members who are part of the same collective entity. *Black v. Bank of Am.*, 30 Cal. App. 4th 1, 6 (1994). In its response to Linglong's Motion for Partial Summary Judgment, Horizon agreed to dismiss counterclaim seventeen.

## Conclusion

For the reasons set forth above, both Plaintiffs' Motion for Partial Summary Judgment, and Counter Defendants' Motion for Summary Judgment are GRANTED in part, and DENIED, part. Counter Defendant John Hagan is dismissed from this action with prejudice. Counterclaims Nine, Ten, Eleven, and Seventeen are dismissed as against all named Counter Defendants. The following claims from Plaintiffs, Linglong Americas, Linglong (Shandong), and LLIT's First Amended Complaint remain for trial:

- Count 1: Breach of Contract (between Horizon and Linglong (Shandong))
- Count 2: Breach of Contract (between Horizon and LLIT)
- Count 3: Breach of Contract (Anticipatory Repudiation) - involving contract(s) between Horizon and Linglong (Shandong) and contract(s) between Horizon and LLIT
- Count 4: Unjust Enrichment (in the alternative to Counts 1 and 2)
- Count 5: Tortious Interference with Business Relations
- Count 6: Defamation
- Count 7: Deceptive Trade Practices
- Count 8: Declaratory Judgment (absence of Exclusive Distributorship)

The following Amended Counterclaims of Defendant, Horizon also remain for trial:

| | |
|---|---|
| Cclaim 1: | Declaratory Relief (existence of Exclusive Distributorship against Linglong (Shandong) and LLIT) |
| Cclaim 2: | Declaratory Relief (regarding loan terms - against all Linglong Counter Defendants) |
| Cclaim 3: | Breach of Contract (exclusive distributorship - against Linglong(Shandong), and LLIT) |
| Cclaim 4: | Breach of Contract (loan - against all Linglong Counter Defendants) |
| Cclaim 5: | Breach of Contract (sales - against Linglong (Shandong) and LLIT) |
| Cclaims 6-8: | Promisory Estoppel (against all Linglong Counter Defendants) |
| Cclaim 12: | Unjust Enrichment (against all Linglong Counter Defendants) |
| Cclaim 13: | Money Had and Received (against all Linglong Counter Defendants) |
| Cclaim 14: | Misappropriation of Trade Secrets (against all Linglong Counter Defendants and Mr. Wang) |
| Cclaim 15: | Deceptive Trade Practices (against all Linglong Counter Defendants and Mr. Wang) |
| Cclaim 16: | Fraud (against all Linglong Counter Defendants and Mr. Wang) |

Trial of this matter is set for April 22, 2019 at 8:30 a.m.. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: March 15, 2019